O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JACK H. AMLOIAN,<br><br>                 Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                 Respondent. | Case No. SA CV 15-02081-DFM<br><br>MEMORANDUM OPINION<br>AND ORDER |

Jack H. Amloian ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security Disability Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## I.

## BACKGROUND

Plaintiff filed an application for DIB on July 23, 2012. Administrative Record ("AR") 21, 99, 118, 176-82. After his application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"). AR 136-37.

A hearing was held on April 22, 2014, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE") and a medical expert. AR 44-73. In a written decision issued on June 6, 2014, the ALJ denied Plaintiff's claim for benefits. AR 21-31. In reaching his decision, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, left ulnar neuropathy, and affective disorder. AR 23. The ALJ found that despite those impairments, Plaintiff retained the residual functional capacity ("RFC") to

> perform light work . . . with the following exceptions: [Plaintiff] can sit, stand, or walk for six hours in an eight hour day. He can lift and carry 20 pounds occasionally and 10 pounds frequently. He requires the option to change positions between sitting and standing, with the ability to stand up to five minutes at a time. Further, he can occasionally climb stairs, balance, stoop, kneel, crouch and crawl. [Plaintiff] cannot climb ladders, ropes or scaffolds. He should not work at unprotected heights, and should avoid concentrated exposure to cold, heat, wetness, humidity, or vibrating equipment or tools. [Plaintiff] can perform simple, routine tasks, which are object oriented in a habituated setting.

AR 25. Based on the VE's testimony, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. AR 31. He therefore concluded that Plaintiff was not disabled. Id.

Plaintiff requested review of the ALJ's decision. AR 17. After considering additional evidence, the Appeals Council denied Plaintiff's request on February 9, 2015.[1] AR 1-5. This action followed.

---

[1] Social Security Administration regulations "permit claimants to submit new and material evidence to the Appeals Council and require the Council to

## II.

## DISCUSSION

Plaintiff argues that the ALJ improperly rejected the opinions of (1) Plaintiff's treating orthopedic surgeon, Dr. Michael Esposito, and (2) the psychiatric consultative examiner, Dr. Bong Doan, and nonexamining medical consultant, Dr. Sonya Adamo. Joint Stipulation ("JS") at 4.

### A.   Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a nonexamining physician. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the

---

consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012); see also 20 C.F.R. § 404.970(b). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes, 682 F.3d at 1163; accord Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232-33 (9th Cir. 2011).

3

opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>accord</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. § 404.1527(c).

**B.     The ALJ's Rejection of Dr. Esposito's Opinion**

Plaintiff contends that the ALJ failed to give specific and legitimate reasons for discounting Dr. Esposito's opinion. JS at 5-12, 16-17. For the reason discussed below, the Court agrees.

**1.     Relevant Facts**

Plaintiff began working as a UPS delivery-truck driver in January 1991. AR 521. On June 6, 2011, he injured his back at work while pulling a 70-pound package from his truck. AR 521. He later returned to work but re-injured his back while moving packages on July 8, 2011. <u>Id.</u> On July 20, 2011, he was terminated from his job. AR 522.

On May 15, 2012, Dr. David S. Kim, a board-certified orthopedic surgeon, examined Plaintiff and reviewed his medical records as part of Plaintiff's worker's-compensation case. AR 460-80. Based on a July 2011 MRI, Dr. Kim diagnosed "[l]umbar spine sprain/strain, superimposed upon a 3-4 mm right paracentral posterior disc extrusion at L3-4, 2-3 mm disc protrusions at L4-5 and L5-S1, and a 1-2 mm disc bulge at L2-3." AR 467; <u>see also</u> AR 587 (July 2011 MRI report). Dr. Kim opined that because of those conditions, Plaintiff was precluded from lifting more than 25 pounds and from performing repetitive bending and stooping. AR 470.

On November 10, 2012, Dr. Warren Yu, a board-certified orthopedic surgeon, examined Plaintiff and reviewed his MRI at the Social Security

4

Administration's request. AR 514-18. Dr. Yu found that Plaintiff's gait was "relatively unremarkable," although he was "listing to the left side due to . . . back pain and spasm." AR 515. He had full and painless range of motion of the cervical and thoracic spine. AR 515-16. Plaintiff's lumbar spine had "moderate spasm" and ranges of motion that were "moderately guarded with flexion to only 45 degrees, extension of 10 degrees, right bending of 5 degrees, and left bending of 10 degrees." AR 516. Straight-leg-raising tests were negative. Id. All of Plaintiff's other ranges of motion were normal and he had "5/5" strength throughout the upper and lower extremities. AR 517. Dr. Yu diagnosed "[m]yofascial back pain with early disc desiccation at L3 through S1." Id. He opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for 6 hours out of an 8-hour day, sit for 6 hours out of an 8-hour day, and perform unlimited pushing and pulling. AR 517-18.

On December 10, 2012, medical consultant Dr. N.J. Rubaum reviewed Plaintiff's medical records and opined that he could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for about 6 hours in an 8-hour day, sit for a total of 6 hours in an 8-hour day, and performed unlimited pushing and pulling. AR 94.

On June 20, 2013, medical consultant Dr. Murari Bijpuria, who specialized in surgery, reviewed Plaintiff's medical records and opined that he could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for about 2 hours in an 8-hour day; sit for 6 hours in an 8-hour day; perform unlimited pushing and pulling; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and never climb ladders, ropes, or scaffolds. AR 114-15.

On September 4, 2013, Plaintiff underwent a second MRI, which showed a new 4-millimeter protrusion and extrusion at L2-3 since the July

2011 MRI. AR 803-04. The MRI also showed a 2-millimeter disc bulge at L3-4, a 2- to 3-millimeter disc bulge at L4-5, and a 3-millimeter disc bulge at L5-S1. Id. There was also bilateral neural foraminal narrowing at L4-5 and L5-S1. Id.

On September 26, 2013, Dr. Esposito, Plaintiff's treating orthopedic surgeon, completed a "Disorders of the Spine Treating Physician Data Sheet." AR 782-89. Dr. Esposito, who had treated Plaintiff since November 2011, AR 290, listed his diagnoses as lumbar-spine disc herniation at L3/4, L4/5, and L5/S1 with "severe mechanical back pain." AR 783. Dr. Esposito noted that Plaintiff had a severe truncal shift "on occasion," 70% loss of motion of the lumbar spine, positive straight-leg-raising tests bilaterally at 70 degrees, and lumbar spinal stenosis. AR 784-85. Dr. Esposito noted that, once authorized, Plaintiff would possibly undergo a lumbar decompressive laminectomy and interbody fusion at L3-4, L4-5, and L5-S1. AR 783. He opined that Plaintiff would need to change positions every 30 minutes to lessen his pain. AR 785. He occasionally needed to use an assistive device that limited the use of both arms. AR 786. Dr. Esposito noted that treatment had "significantly relieved" Plaintiff's pain. AR 787. Dr. Esposito opined that Plaintiff could stand for 2 hours a day, walk for 2 hours a day, lift and carry less than 10 pounds, and never bend or stoop. Id.

Dr. Richard Alan Hutson, who specialized in orthopedic surgery, reviewed Plaintiff's medical records and testified at the April 22, 2014 hearing. AR 64. Dr. Hutson summarized Plaintiff's MRI reports and listed his impairments as vertebrogenic disorder and left ulnar neuropathy. AR 65-66. He believed Plaintiff could

> do light work by definition, lift 20 pounds occasionally, 10 pounds
> frequently. Stand or walk six hours in an eight hour day. Sit six
> hours in an eight hour day. During the sitting portion of his work

6

he would need to have sit/stand option. He'd be allowed to stand up [for] up to five minutes out of every hour. The five minutes would not have to be consecutive. The postural limits would be left ulnar nerve problem, I would say his hands could be used frequently but not continuously. The postural items could be done on an occasional basis except no ladders, ropes, or scaffolds. Environmentally I would avoid concentrated exposure of extreme cold, extreme heat, wetness, humidity, vibration. Say no heights or hazardous areas or moving machinery.

AR 66-67.

The ALJ accorded "great weight" to Dr. Yu's opinion, finding that it was consistent with the medical record and based on an independent examination of Plaintiff. AR 29. The ALJ accorded "great weight" to Drs. Rubaum's and Bijpuria's opinions because they were "supported by the objective medical findings" and "consistent with the substantial evidence of record." AR 28. And the ALJ accorded "great weight" to Dr. Hutson's opinion because it was "consisten[t] with the medical evidence of record" and "based upon a thorough review of the available medical record and a comprehensive understanding of agency rules and regulations." Id.

The ALJ accorded "some weight" to Dr. Kim's opinion regarding Plaintiff's lifting and postural limitations because it was "somewhat consistent with the medical records in evidence." AR 28-29. Finally, the ALJ accorded only "some weight" to Dr. Esposito's opinion, finding that the doctor "may have been overly sympathetic to [Plaintiff's] subjective pain complaints due to his treating relationship." AR 29.

## 2.   Analysis

As Plaintiff argues, JS at 10, the ALJ erred in discrediting Dr. Esposito's opinion solely because he "may" have been "overly sympathetic" to Plaintiff's

pain. The ALJ pointed to no evidence showing that Dr. Esposito was so "sympathetic" that he was unable to formulate a reliable professional opinion or that he was lying in order to help Plaintiff obtain disability benefits. See Haulot v. Astrue, 290 F. App'x 53, 54 (9th Cir. 2008) (holding that ALJ's finding that treating doctor "appeared" to be "sympathetic" to plaintiff was insufficient reason for discounting doctor's opinion when ALJ "never pointed to any evidence that [doctor] was so sympathetic to [plaintiff] as to impair his sound professional opinion, or was acting as [plaintiff's] agent to aid him in collecting disability benefits"); Lester, 81 F.3d at 832 (finding that ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits," but ALJ may "introduce evidence of actual improprieties" in physicians' opinions (citation omitted)). As such, this was not a specific and legitimate reason for discounting Dr. Esposito's opinion.

The Commissioner acknowledges that the ALJ's reason for rejecting Dr. Esposito's opinion was "poorly phrased," but nevertheless contends that any error was harmless because it is "clear from the face of the decision that the ALJ rejected" the opinion because "it was in conflict with all of the other opinion evidence in the file." JS at 13. But as Plaintiff argues, "[i]t is the very conflict between different [physicians' opinions] that requires the ALJ to provide specific and legitimate reasons to reject the treating specialist's opinion." JS at 16; see also Carmickle, 533 F.3d at 1164. The Commissioner also asserts, based on Tonapetyan, 242 F.3d at 1149, that the conclusions of examining physicians Kim and Yu "are substantial evidence supporting the ALJ's decision." JS at 15. But nothing in that case states that the existence of contrary medical opinions alone can justify the ALJ's rejection of a treating physician's opinion. See Tonapetyan, 242 F.3d at 1149 (finding that contrary opinions of examining and nonexamining doctors served as "additional" specific and legitimate reasons for rejecting treating and examining doctors'

8

opinions); <u>Morton v. Colvin</u>, No. 14-5468, 2015 WL 509835, at *3 (W.D. Wash. Feb. 6, 2015) (finding that although the Ninth Circuit in <u>Tonapetyan</u> "found that contrary opinions served as 'additional specific and legitimate reasons' to reject another medical opinion, it is clear from the court's analysis that this contradiction alone was insufficient to discredit the opinion").

In sum, the ALJ nowhere explains how the medical evidence supported the examining and nonexamining physicians' opinions but not Dr. Esposito's. Nor does he give any other legally sufficient reason why Dr. Esposito's opinion should not be credited. As such, remand is necessary to allow the ALJ to either explain his reasoning in rejecting Dr. Esposito's opinion or credit that opinion and incorporate its findings into Plaintiff's RFC.

**C.     The ALJ's Rejection of Drs. Doan's and Adamo's Opinions**

Plaintiff contends that the ALJ erred in rejecting parts of the opinions of Dr. Doan, an examining psychiatrist, and Dr. Adamo, a nonexamining medical consultant. JS at 17-19, 21.

### 1.     Relevant Facts

On November 10, 2012, Dr. Doan, a board-certified psychiatrist, examined Plaintiff at the Social Security Administration's request. AR 507-11. Dr. Doan noted that Plaintiff had attempted suicide several months earlier by overdosing on painkillers and alcohol; he was hospitalized overnight and released with a recommendation to see a psychiatrist. AR 508.

Upon examination, Dr. Doan noted that Plaintiff had loud and pressured speech, depressed mood, and constricted affect. AR 509. His thought processes were linear and goal directed, he had no hallucinations or paranoia, and he was alert and oriented. <u>Id.</u> He could perform serial sevens without difficulty and spell "world" forward and backward. <u>Id.</u> Plaintiff could state similarities between objects and analyze the meaning of simple proverbs. AR 510. He had common sense and an adequate fund of knowledge. <u>Id.</u>

Dr. Doan diagnosed "mood disorder due to general medical condition." Id. He concluded that Plaintiff "did very well" during the mental-status examination and "showed no evidence of cognitive impairment." Id. Plaintiff had "no difficulty" interacting with the doctor or clinic staff, maintaining composure and even temperament, maintaining social functioning, or focusing and maintaining concentration. Id. Dr. Doan opined that Plaintiff

> would have no limitations performing simple and repetitive tasks and mild limitations performing detailed and complex tasks. [He] would have moderate difficulties to be able to perform work activities on a consistent basis without special or additional supervision. [Plaintiff] would have moderate limitations completing a normal workday or work week due to their [sic] mental condition. [He] would have no limitations accepting instructions from supervisor [sic] and interacting with coworkers and with the public. He would have moderate difficulties to be able to handle the usual stresses, changes and demands of gainful employment.

Id. Dr. Doan noted that Plaintiff was not receiving psychiatric treatment and that if he did, his depression would "significantly improve." AR 511.

On December 29, 2012, Dr. Harvey Bilik, a psychologist, reviewed Plaintiff's medical records and completed a Psychiatric Review Technique ("PRT") and mental-RFC assessment at the Social Security Administration's request. AR 79, 81-83. In the PRT assessment, Dr. Bilik opined that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. AR 79.

In the mental-RFC assessment, Dr. Bilik opined that Plaintiff was not significantly limited in his ability to carry out very short and simple

10

instructions, perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, work with others, make simple work-related decisions, take precautions against hazards, travel in unfamiliar places, and set goals. AR 82-83. Plaintiff was "moderately" limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek, and respond appropriately to changes in the work environment. Id. Dr. Bilik explained that Plaintiff "can carry out simple and some detailed—but perhaps not complex—instructions over the course of a normal workweek." AR 82. He also noted that Plaintiff "can adapt." AR 83.

On June 25, 2013, Dr. Sonya Adamo, a psychologist, reviewed Plaintiff's medical records and completed a PRT assessment at the Social Security Administration's request. AR 112. Dr. Adamo, like Dr. Bilik, opined that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Id. Dr. Adamo agreed with Dr. Doan's finding that "[w]ork limitations included moderate limitation in completing a full work week and in managing stress," noting that "[w]hile this is not fully supported in his presentation (with no limitations observed)," the limitations were "consistent with [Plaintiff's] history." Id.

The ALJ accorded "some weight" to Dr. Doan's opinion, finding that it was "not completely consistent with the medical evidence of record." AR 29. The ALJ noted, however, that "the record does support Dr. Doan's finding that [Plaintiff] can perform simple work." Id. The ALJ noted that the nonexamining medical consultants, Drs. Bilik and Adamo, had "concluded that [Plaintiff] has mild limitations in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining

11

concentration, persistence, and pace; and no repeat episodes of decompensation." AR 28. The ALJ gave those opinions "great weight" but stated that he had "considered the evidence in a light most favorable to" Plaintiff and concluded that he had "moderate difficulties in social functioning." Id. The ALJ noted that Drs. Bilik and Adamo "had the opportunity to review the medical evidence, thus the opinions are supported by the objective medical findings and are consistent with the substantial evidence of record." AR 28. The ALJ therefore concluded that Plaintiff retained the RFC to "perform simple, routine tasks, which are object oriented in a habituated setting." AR 25.

### 2.    Analysis

Plaintiff argues that the ALJ failed to provide "clear and convincing reasons" for rejecting Dr. Doan's finding that Plaintiff would have moderate limitations in consistently performing work activities without special or additional supervision, completing a full work week, and managing stress. JS at 18, 21. He further argues that the ALJ failed to give any reasons for rejecting the portion of Dr. Adamo's opinion "that agreed with [Dr. Doan] and made similar findings after reviewing the record." JS at 18.

Plaintiff's argument fails because the ALJ's RFC assessment limiting Plaintiff to "simple, routine tasks, which are object oriented in a habituated setting" accommodated his moderate limitations in performing work activities without special or additional supervision, completing a work week, and managing stress. AR 25; see Lewis v. Colvin, No. 14-01326, 2015 WL 4164682, at *5 (C.D. Cal. July 9, 2015) (finding that ALJ did not err in translating "moderate limitations in performing work activities on a consistent basis without special or additional supervision, completing a normal work day or work week, and concentration, persistence and pace" into restriction to "simple, routine, repetitive tasks"); Rodriquez v. Colvin, No. 13-01716, 2015

12

WL 1237302, at *6 (E.D. Cal. Mar. 17, 2015) (finding that "a moderate limitation in the ability to complete a workday or workweek without interruption is consistent with and properly captured by a limitation to simple repetitive tasks"); McLain v. Astrue, No. 10-1108, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011) ("[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks"). Indeed, Dr. Doan himself found that Plaintiff did "very well" during the mental-status examination, had no cognitive impairment, and had no difficulty maintaining composure and even temperament, focusing and maintaining concentration, and interacting with clinic staff. AR 510. Nothing in those findings indicates that Plaintiff would be unable to perform simple, routine work in a "habituated setting." And Dr. Bilik specifically indicated that Plaintiff could complete a normal workweek if limited to "simple and some detailed" instructions. See AR 82 (Dr. Bilik's finding that Plaintiff "can carry out simple and some detailed—but perhaps not complex—instructions over the course of a normal workweek"). Because the RFC accommodated the doctors' findings of moderate limitations, reversal is not warranted on this ground. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (finding that ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated the examining and reviewing physicians' findings that plaintiff had "slow pace" and "several moderate limitations in other mental areas"); see also Hoopai v. Astrue, 499 F.3d 1071, 1076-77 (9th Cir. 2007) (finding that plaintiff's moderate limitations on his ability to "perform activities within a schedule," "maintain regular attendance," "complete a normal workday and workweek," and "perform at a consistent pace without an unreasonable number and length of rest periods" were not "sufficiently severe" to limit range of work permitted by plaintiff's exertional limitations).

1  **D.**   **Remand for Further Proceedings Is Appropriate**

2       The decision whether to remand for further proceedings is within this

3  Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).

4  Where no useful purpose would be served by further administrative

5  proceedings, or where the record has been fully developed, it is appropriate to

6  exercise this discretion to direct an immediate award of benefits. Id. at 1179

7  (noting that "the decision of whether to remand for further proceedings turns

8  upon the likely utility of such proceedings"); Benecke v. Barnhart, 379 F.3d

9  587, 593 (9th Cir. 2004).

10       A remand is appropriate, however, where there are outstanding issues

11  that must be resolved before a determination of disability can be made and it is

12  not clear from the record that the ALJ would be required to find the claimant

13  disabled if all the evidence were properly evaluated. Bunnell v. Barnhart, 336

14  F.3d 1112, 1115-16 (9th Cir. 2003); see also Garrison, 759 F.3d at 1021

15  (explaining that courts have "flexibility to remand for further proceedings

16  when the record as a whole creates serious doubt as to whether the claimant is,

17  in fact, disabled within the meaning of the Social Security Act."). Here,

18  remand is appropriate for the ALJ to fully and properly assess the weight to be

19  accorded to Dr. Esposito's opinion and, if necessary, reassess Plaintiff's RFC

20  and determine whether he can perform any jobs existing in significant numbers

21  in the national economy.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

14

## III.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings.

Dated:  December 13, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge